**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **FELICIA STROTHERS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: PWG-14-3594** |
| | * | |
| **CITY OF LAUREL, MARYLAND,** | * | |
| **Defendant.** | * | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM OPINION**

Plaintiff has brought this *pro se* discrimination and retaliation case against her former employer following termination during her initial six-month probationary period. Although Plaintiff purportedly was terminated because of repeated lateness and poor performance, she alleges that the actual reason for her termination was racial animus and/or retaliation for her complaints of harassment. Defendant has moved to dismiss or for summary judgment, arguing that Plaintiff filed her case more than ninety days after her right-to-sue letter was delivered, that she has not stated a prima facie case for discrimination, and that generalized complaints of harassment do not constitute protected activity for the purposes of retaliation claim. I find that the complaint was timely filed within ninety days of Plaintiff's receipt of the right-to-sue letter and complaints of harassment should have been understood to constitute racial harassment by her employer. However, I agree with Defendant that Plaintiff has not stated a *prima facie* discrimination claim. Accordingly, I grant the motion in part and deny it in part.

## I.      BACKGROUND

For the purposes of considering Defendant's motion, I accept the facts that Plaintiff has alleged in her Complaint, ECF No. 2, as true.  *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).  Plaintiff Felicia Strothers is a minority woman over forty.  Compl. ¶ 9.  On October 7, 2013, Defendant City of Laurel, Md. (the "City") hired her as an Administrative Assistant II in its Department of Communications.  *Id.* ¶ 1.

As a new employee, Strothers was placed on a six-month probationary period.  *Id.* ¶ 2 During that time, she alleges that she experienced "daily harassment" at the hands of her supervisor, Carreen Koubek.  *Id.* ¶ 7.  Although the Complaint itself is sparse on details, Strothers has provided exhibits that detail some of the criticisms leveled at her by Koubek and resulting exchanges between them.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").[1]  The principal dispute between Strothers and Koubek appears to center on Strothers's arrival time: Strothers believed that she was required to be at work by 9:00 a.m., whereas Koubek maintained that Strothers needed to clock in by 8:55 a.m. so as to be at her desk and ready to work before nine.

In November 2013, Strothers requested documents from her Human Resources file and learned that Koubek had sent the Director of Communications, Pete Piringer, a memorandum containing a day-by-day summary of purported issues Koubek had with Strothers's work.  *Id.* ¶ 16.  According to those journal entries, Strothers was told to be at work by 8:55 a.m. but repeatedly arrived later than that, though often (but not always) before 9:00 a.m.  Koubek Mem., Compl. Ex. 6, ECF No. 13-7.  Koubek also describes several interactions with Strothers that

---

[1] Although Strothers has filed her exhibits separately from her Complaint, it is clear that she intended those materials to be exhibits to her complaint and I will treat them as such.  *See* Fed. R. Civ. P. 8(e).

Koubek found concerning, *id.*, and noted that Strothers was unfamiliar with software that she had implied she could use during her interview, *id.* at 5. Strothers alleges that the memorandum was placed in her file "without [her] knowledge," Compl. ¶ 16, though she does not allege that Koubek was obligated to inform her of the memorandum. On December 13, 2013, Strothers sent Piringer an apparently unsolicited five-page memorandum responding to the Koubek Memorandum. Resp. to Koubek Mem., Compl. Ex. 7, ECF No. 13-8. In her response, Strothers stated, "Had I not submitted this request [to Human Resources], I would not have known of such documentation. As a result, I'm obligated to respond to the accusations." *Id.* at 1. She then responded to each item in the Koubek Memorandum, but did not dispute the arrival times recorded by Koubek. *See* Resp. to Koubek Mem. She concluded with, "It is very disappointing to be under such scrutiny from the very beginning despite trying to keep the lines of communication open. It is also very disappointing to know that such documentation can be placed in an employee's file without them knowing." *Id.* at 5.

On January 6, 2014, Strothers received an evaluation from Koubek rating her "Unsatisfactory" in every category and overall and noting that she required excessive guidance and follow-up and was "[c]onsistently late to work." Performance Evaluation, Compl. Ex. 9. In the section allowing for employee comments, Strothers "note[d] that [she did] not agree with the evaluation of unsatisfactory," and protested Koubek's assertion that she was required to be at work by 8:55 a.m. *Id.* at 2. Strothers also sent a memorandum to Piringer disputing her evaluation and noting that her position "was ill-defined" and that she had tried to understand and define her position. Resp. to Evaluation, Compl. Ex. 10, ECF No. 13-11.

On February 26, 2014, Strothers sent a memorandum to Piringer regarding an incident involving Koubek. Casual Friday Mem., Compl. Ex. 12, ECF No. 13-13. According to

Strothers, Koubek had confronted her and told her that her pants were not appropriate for casual Friday because they appeared to be leggings, although Strothers maintains that they were not. *Id.* Strothers said that she was "shocked and humiliated" by the experience, and that since she had started working for the City, she "did not feel welcome by Carreen [Koubek]." *Id.* at 2. She concluded by saying,

> I've been treated as if I'm a Receptionist, not an Administrative Assistant and we have a building receptionist who calls before letting anyone come back to our office. Documentation have [*sic*] been placed in my file without my knowledge by Carreen, it has been a very uncomfortable and hostile environment since day 1. I have had to respond to documentation on more than one occasion. I was given a 3-month evaluation without ever being told I would have one. I was given an unsatisfactory after only 3 months in an ill-defined office and position. I did not agree with the evaluation and responded in writing to Pete. It has been difficult to come into work under these circumstances and I've been left to feel like I have no say or any rights because I'm on 6-month probation. I have over 20 years office experience, I have a Bachelor's degree and I have never been through anything like this. I was not told before accepting the job, that Carreen Koubek would be my supervisor, the acceptance letter just stated that on the first day I need to report to Carreen. It wasn't until after a month or two that she said to me, "Felicia, I am your supervisor." Pete, when I asked you, you said, "No, you don't think so." I had no idea I would have a supervisor, especially one that does not want me here to begin with.
>
> In summary, I have tried to make this work and things have not gotten better. I need to be moved, or Carreen no longer my supervisor. The stress and harassment has become unbearable, making it difficult to come into the office.

*Id.* at 2–3.

According to Strothers, she complained about Koubek's behavior orally and in writing to numerous individuals, including Piringer, City Administrator Kristie Mills, Michael Greene of the Human Resources Department, City Council President Fred Smalls, and Mayor Craig A. Moe. Compl. ¶ 7. No action was taken in response to these complaints, *id.* ¶ 8, although Strothers alleges that Piringer once said that Koubek wanted to replace her with an internal hire of a different race, *id.* ¶ 9.

On March 7, 2014, just a few weeks after she had complained about Koubek's behavior, Strothers was terminated. *Id.* ¶¶ 3, 20.[2] According to Strothers, her termination was "a result of a departmental reorganization and as a result of harassment by Careen Koubek; retaliation." *Id.* ¶ 5. The memorandum notifying her of her termination said that Strothers had "been counseled by [her] supervisor several times regarding performance issues including continuing tardiness and some other performance expectations," and that "of the approximately 90 working days since [she] began employment, [she had] been tardy at least 38 of those days." Termination Mem., Compl. Ex. 14, ECF No. 13-15. Strothers alleges that she was not excessively tardy. Compl. ¶ 4. She appealed her termination but the appeal was denied. *Id.* ¶ 21.

On March 18, 2014, Strothers filed a charge of discrimination (the "EEOC Charge") with the U.S. Equal Employment Opportunity Commission (the "EEOC") alleging race discrimination and retaliation. EEOC Charge, Def.'s Mem. Ex. A, ECF No. 14-2. On June 27, 2014, the EEOC issued a Dismissal and Notice of Rights ("Right-to-Sue Letter"), which bore a June 30, 2014 postmark. Right-to-Sue Letter, Compl. Ex. 1, ECF No. 13-2. According to Strothers, she was away that week for the Fourth of July and received the Right-to-Sue Letter when she returned home on Saturday, July 5, 2014. *Id.*

On October 3, 2014, Strothers filed her *pro se* complaint in the Circuit Court for Prince George's County. Compl. Although she did not expressly enumerate her claims for relief, she appears to plead race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and defamation under

---

[2] Although the Complaint alleges that Strothers was terminated on March 7, 2013, Compl. ¶ 3, that date is before she was hired, making it clear that she intended to plead that she was terminated in 2014.

Maryland law.  The City removed to this Court, Notice of Removal, ECF No. 1, and, after receiving leave to do so, filed its Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mot"), ECF No. 14, and supporting Memorandum ("Def.'s Mem."), ECF No. 14-1, on December 29, 2014.  Strothers has filed her Opposition ("Pl.'s Opp'n"), ECF No. 16, and the City has filed its Reply ("Def.'s Reply"), ECF No. 17.  The motion now is ripe and is before me.  Having reviewed the filings, I find a hearing is not required.  Loc. R. 105.6.

## II.   STANDARDS OF REVIEW

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

A party may move to dismiss a claim pursuant to Fed. R. Civ. P. 12(b)(1), which provides that a party may assert lack of subject matter jurisdiction by motion as a defense to a claim for relief.  A Rule 12(b)(1) motion to dismiss may allege that "the jurisdictional allegations in the complaint are not true."  *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *3 (D. Md. Aug. 6, 2010); *see Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (same).  If the defendant alleges as much, then "the Court may . . . consider matters beyond the allegations in the complaint."  *Fontell*, 2010 WL 3086498, at *3.  The Court "regard[s] the pleadings' allegations as mere evidence on the issue," and its consideration of additional evidence does not "convert[] the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac Ry. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see Adams*, 697 F.2d at 1219 ("A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment.").

When a defendant challenges subject matter jurisdiction, the burden is on the plaintiff to prove that subject matter jurisdiction exists. *See Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *El-Amin v. Int'l Longshoremen's Ass'n Local No. 333*, No. CCB-10-3653, 2011

WL 2580630, at *2 (D. Md. June 28, 2011).  "A court should grant a Rule 12(b)(1) motion 'if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'"  *El-Amin*, 2011 WL 2580630, at *2 (quoting *Evans*, 166 F.3d at 647).

### B.   Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.

Although Plaintiff is proceeding *pro se* and her complaint is to be construed liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), this does not absolve Plaintiff of her obligation to plead a plausible claim, *see Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

### C.  Conversion to Summary Judgment

Where a defendant files a motion styled as one to dismiss or, in the alternative, for summary judgment, it "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure."  *See Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). Pursuant to Rule 12(d), where "matters outside the pleadings are presented to and not excluded by the court," a motion to dismiss must be treated as one for summary judgment and all parties must be given an opportunity to present evidence on their behalf.  Fed. R. Civ. P. 12(d).  Styling a motion as one to dismiss or, in the alternative, for summary judgment is sufficient to provide notice to all parties that the motion may be converted to one for summary judgment. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

However, "a district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  *Sager*, 855 F. Supp. 2d at 542 (quoting 5C Charles Alan Wright et al., *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2011 Supp.)).  "This discretion 'should be exercised with great caution and attention to the parties' procedural rights.'  In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary."  *Id.*

## III.  DISCUSSION

### A.  Exhaustion of Administrative Remedies

As a threshold matter, the City argues that Strothers has not satisfied the jurisdictional prerequisites to file a Title VII case because she filed her complaint more than ninety days after

she received the Right-to-Sue Letter from the EEOC. Def.'s Mem. 7–9. To bring a Title VII claim in federal court, a plaintiff must file suit within ninety days of receiving notice of the right to sue. 42 U.S.C. § 2000e-5(f)(1). Although the City asserts that this time limit is jurisdictional, Def.'s Mem. 8, this is not supported by Fourth Circuit law, *see Dale v. Md. Dep't of Transp.*, No. ELH-13-191, 2015 WL 221628, at *12 (D. Md. Jan. 15, 2015) ("[T]he Fourth Circuit has repeatedly applied an equitable tolling analysis to the ninety-day filing requirement set out in 42 U.S.C. § 2000e-5(f)(1)."); *Nguyen v. Inova Alexandria Hosp.*, 187 F.3d 630, 1999 WL 556446, at *3 (4th Cir. July 30, 1999) ("[W]e have engaged in a 'case-by-case examination to determine if an equitable tolling of the filing period is appropriate.'" (quoting *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987))). In calculating the date on which the period began to run, the Fourth Circuit has rejected a mechanical approach or a strict "actual receipt" rule, and instead has focused on the facts of each case to determine when receipt has occurred.

In this case, the Complaint bears a date stamp of October 3, 2014 from the Circuit Court for Prince George's County, eliminating any doubt as to when it was filed. Compl. For the Complaint to be timely, Strothers must have received the Right-to-Sue letter no earlier than July 5, 2014. Although the Right-to-Sue Letter bears a date of June 27, 2014 and a postmark of June 30, 2014, Strothers has stated that did not receive it until she returned home from a vacation on July 5, 2014. Right-to-Sue Letter; Pl.'s Opp'n 2.

The City argues that, as a matter of law, I must rely on Fed. R. Civ. P. 6(d) to presume that the Right-to-Sue Letter arrived three days after it was sent (i.e. July 3, 2014), rendering the complaint untimely. Def.'s Reply 4 (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984)). This mischaracterizes the law. Although the Fourth Circuit has "utilized procedural rules in ascertaining the receipt date of notice of right to sue letters," those rules only

provide a useful presumption and, "[o]f course, if the actual date of receipt is confirmed by evidence, that date governs." *Nguyen*, 1999 WL 556446, at *3. Strothers has stated the date on which she actually received the Right-to-Sue Letter, so that I need not—and should not—rely on mere presumptions.[3]

The City also relies on a line of cases from the Fourth Circuit that found that the limitations period began to run before a plaintiff personally received a right-to-sue letter where it had been received by an agent of the plaintiff. *See Nguyen*, 1999 WL 556446, at *3 (period began to run when mail was picked up by neighbor while plaintiff was out of town because neighbor acted as agent for plaintiff); *Watts-Means v. Prince George's Cnty. Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993) (period began to run when plaintiff received notice that right-to-sue letter was at post office waiting to be picked up); *Harvey*, 813 F.3d at 654 (period began to run when plaintiff's wife received letter even though she did not inform him of it until several days later). But in adopting this rule, the Fourth Circuit also cited with approval to *Franks v. Bowman Transportation Co.*, which held that when a letter was received and promptly lost by the plaintiff's nine-year-old nephew, the period did *not* begin to run. *See Harvey*, 813 F.2d at 654 (citing *Franks v. Bowman Transp. Corp.*, 495 F.2d 398 (5th Cir. 1974), *rev'd on other grounds*, 424 U.S. 747 (1976)).

Strothers did not appoint an agent to pick up her mail, nor is there any indication that another member of her household or any other person actually received the Right-to-Sue Letter prior to July 5, 2014. Nor had Strothers left her home unattended for an unreasonable period of

---

[3] The City correctly has noted that Strothers did not provide an affidavit or declaration stating when she actually received the Right-to-Sue Letter but it has assumed that she could do so if required. Def.'s Reply 2. I agree with Defendant that it would be unduly formalistic at this stage to require Strothers to submit a sworn affidavit to support a fact that she already has represented is true pursuant to Fed. R. Civ. P. 11(b).

time so as to create a broad, open-ended limitations period for her to file.  *Cf. Harvey*, 813 F.2d

at 654 (the notice period is "intended to require claimants to act expeditiously, without

unnecessary delay").  Rather, she was away from her home for no more than one week, over a

national holiday when millions of Americans do the same, and received the notice as soon as she

returned home—likely no more than a few days after it had arrived.  Accordingly, there is no

reason to find that the letter should be deemed received before Strothers actually received it on

July 5, 2014,  and her Complaint therefore was filed timely within the ninety-day limitations

period.

However, the City also argues that Strothers has not exhausted all of her claims before

the EEOC.

> "Only those discrimination claims stated in the initial charge, those reasonably
> related to the original complaint, and those developed by reasonable investigation
> of the original complaint may be maintained in a Title VII lawsuit."  Thus, a
> claim in formal litigation will generally be barred if the EEOC charge alleges
> discrimination on one basis, such as race, and the formal litigation alleges
> discrimination on a separate basis, such as sex.

*Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (internal citations omitted).  The

City correctly notes that Strothers did not include a claim for age discrimination in her EEOC

charge, and Strothers has withdrawn that claim.  Pl.'s Opp'n 1.  But in its Reply, the City also

appears to argue that Strothers's claims should be strictly limited to only those activities that

took place in the two-week time span between February 21 and March 7, 2014.  Def.'s Reply 9–

10.  Because Strothers has alleged a single protracted pattern of discrimination and harassment, I

find that any other issues between her and Koubek during her short tenure at the City are

"reasonably related to her EEOC charge" alleging race discrimination and retaliation, and

undoubtedly would have come up in an administrative investigation.  Accordingly, those claims

are within the scope of the EEOC Charge and Strothers has exhausted her administrative remedies with respect to those claims.

### B. Motion to Dismiss

*1. Race Discrimination*

To succeed on a claim for discriminatory termination, a plaintiff must show

> that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

*Westmoreland v. Prince George's County, Md.*, 876 F. Supp. 2d 594, 604 (D. Md. 2012); *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007); *Riley v. Technical & Mgmt. Servs. Corp.*, 872 F. Supp. 1454, 1460–61 (D. Md. 1995). In the Fourth Circuit, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973), applies to Title VII claims, including termination and retaliation claims. *IJames v. Autumn Corp.*, No. 1:08CV777, 2009 WL 2171252, at *8 (M.D.N.C. July 20, 2009); *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006). Under this framework, after an employee makes out a *prima facie* case, the burden shifts to the employer, which then must "proffer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Wright v. Sw. Airlines*, 319 Fed. App'x 232, 233 (4th Cir. 2009). If the employer does so, the burden shifts back to the employee "to prove by a preponderance of the evidence that the proffered reasons were pretextual." *Id.* at 233.

Defendant argues that Strothers has not stated a *prima facie* claim with respect to the first, third, and fourth elements. First, the City argues that the Complaint "does not state Strothers' race, but only the conclusory allegation that she is a 'minority' and a member of a protected class." Def.'s Mem. 14. To dismiss Strothers's complaint on this basis would be

unduly harsh—particularly where she is unrepresented by counsel.  The allegation that she is a "minority" perhaps could be more specific, but it clearly pleads the relevant fact: that Strothers is not a white woman of European descent.[4]  Further, Strothers has clarified in her Opposition that she is African-American.  Pl.'s Opp'n 3.  It would be an inefficient use of the parties' and the Court's time and resources to require her to replead simply to add additional specificity that she undoubtedly can add.  Fed. R. Civ. P. 1.

However, Strothers has failed to state a claim because she does not plead that she was satisfying her employer's legitimate expectations at the time of her termination or that her position remained open or was filled by a qualified applicant outside of her protected class.

With respect to her work performance, Strothers herself has appended documents to her Complaint that add considerable support of the fact that she was not meeting her employer's expectations at the time she was terminated.  This includes many pages of notations by Koubek indicating that she regularly arrived after 8:55 a.m., *see* Koubek Mem., and an evaluation rating her "unsatisfactory" in every category, Performance Evaluation.  Strothers has pleaded that she was told that Koubek was targeting her because Koubek wanted to replace Strothers with another person of a different race, Compl. ¶ 9, raising the possibility that Koubek may have invented accusations due to racial animus.  Strothers does not deny the facts underlying Koubek's opinions or assert that she was being held to a different standard on account of her race.  *See* Resp. to Koubek Mem.  "'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff."  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)).  And on the record

---

[4] Insofar as the term "minority" carries a clear meaning, it also is no more or less conclusory than an allegation that she is "black" or "African–American."

before me, it is clear that, from the perspective of her employer, Strothers's job performance was not meeting her employer's expectations when she was terminated.

Further, even if Koubek had fabricated reasons to find that Strothers was not meeting her legitimate expectations, it is well-settled in the Fourth Circuit that, under ordinary circumstances, a plaintiff must show that the position was filled by somebody outside of the protected class in order to make out a *prima facie* case for discriminatory discharge. *Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005); *see also Jyachosky v. Winter*, 343 F. App'x 871, 876 (4th Cir. 2009). But instead, in her Opposition Strothers appears to have stated that the City's subsequent hires in the Department of Communications all were African-American. *See* Pl.'s Opp'n 10 (describing Piringer's replacement as Director of the Department of Communications as "an African-American woman, Audrey Barnes who would later hire her own staff who would conveniently happen to also be African American"). Accordingly, she has not pleaded a claim for discriminatory discharge.

It is possible (though far from clear) that Strothers also intended to plead a hostile work environment based on Koubek's actions prior to her termination. Accordingly, I will evaluate the viability of such a claim. Under Title VII, discrimination need not be "economic" or "tangible." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and quotation marks omitted). Rather, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986) (internal brackets and quotation marks omitted)).

"[T]o prevail on a Title VII claim that a workplace is racially hostile, 'a plaintiff must show that there is (1) unwelcome conduct; (2) that it is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) which is imputable to the employer.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)).

This Court has discussed the "'high bar'" set in *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008), that a plaintiff must clear to establish that the offensive conduct was sufficiently severe and pervasive:

> Intermittent acts of harassment are insufficient to establish that a hostile work environment is severe or pervasive.  Indeed, Title VII does not mandate civility in the workplace. Further, a supervisor's strict management style or degree of supervision is not evidence of actionable harassment. However, a work environment can be considered hostile if it is "consumed by remarks that intimidate, ridicule, and maliciously demean the status of women."

*Engler*, 2012 WL 3745710, at *5 (internal citations omitted).  Notably, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted); *Romeo v. APS Healthcare Bethesda, Inc.*, No. WDQ-11-2208, 2012 WL 1852264, at *9 (D. Md. May 17, 2012) (quoting *Faragher*, 524 U.S. at 788).

Here, even assuming that Koubek's conduct was based on racial animus, *see* Compl. ¶ 9, Strothers has alleged only that Koubek was mean-spirited and harsh and difficult to work for, but not that she created a work environment characterized by severe or pervasive racial abuse.  The Complaint itself alleges only that Strothers was accused of tardiness, *id.* ¶ 4, that she received negative feedback in her employee file and performance review, *id.* ¶¶ 16–17, and that she was

wrongly criticized for wearing leggings on casual Friday when she says she actually was wearing pants, *id.* ¶ 19. This simply does not create a racially hostile work environment, and the exhibits provided with the Complaint do not show otherwise.

In her Opposition, Strothers has added additional grievances that she, presumably, could plead in an amended complaint, but those facts still would not support a hostile work environment claim.  First, Strothers says that she overheard Koubek say to others that she "doesn't go to the movies in Laurel anymore because she tends to get in fights with 'those' people," and that she wanted to "sell[] her house and mov[e] far away from 'ghetto' people and mov[e] into Carroll County." Pl.'s Opp'n 5.  Although these statements indeed may be evidence of Koubek's racist views, they were not directed towards Strothers and, however objectionable, were the very sort of "offhand comments, and isolated incidents" that cannot support a hostile work environment claim.  *See Faragher*, 524 U.S. at 788.  Strothers also seeks to rely on Koubek's decision during Black History Month to air a television program titled, "The Day They Came to Arrest the Book," which dealt with the use of "the N-word" in the book *Huckleberry Finn*.  Pl.'s Opp'n 7.  Although even a single use of a severe racial slur, without more, may be severe enough create a racially hostile work environment, *Boyer-Liberto*, 786 F.3d at 280, the claim here is not that Koubek or anybody else actually used a racial slur, but that she decided to air a movie in which it is discussed.  Although it is not hard to see how some may, quite reasonably, find such programming upsetting or offensive, I cannot find that airing a television program with racially charged content during Black History Month, without more, creates a hostile work environment.  *Cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (discussing sexually inappropriate statements in a complaint in an employee's personnel file

could not have created a hostile work environment).  Accordingly, Strothers also has not stated a claim for racial discrimination under a hostile work environment theory.

     *2.  Retaliation*

     To succeed on her Title VII retaliation claim, Strothers must show that (1) she "'engaged in protected activity,'" (2) the employer "'took adverse action against [her],'" and (3) "'a causal relationship existed between the protected activity and the adverse employment activity.'" *Westmoreland*, 876 F. Supp. 2d at 612 (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (alterations in original)).

     The Cirty argues that Strothers has not satisfied the first element because she did not engage in any protected activity.  It is well-settled that that merely objecting to workplace conditions as unfair or abusive is insufficient to "oppose" a Title VII violation for the purpose of the statute.  *See Jackson v. S.C. State Ports Auth.*, No. 2:12-cv-1283 DCN BM, 2014 WL 843270, at *2–3 (D.S.C. March 4, 2014) ("filing a grievance complaining of 'unfair treatment'" "is not protected activity for purposes of a civil rights claim" (citing *Sung Kun Kim v. Panetta*, No. 11-1370, 2012 WL 3600288, at *17 (E.D. Va. Aug. 21, 2012)); *Ruffner v. MD OMG EMP LLC*, No. WDQ-11-1880, 2012 WL 3542019, at *3 (D. Md. Aug. 13, 2012) ("The employee must, at least implicitly or indirectly, complain about or oppose prohibited discrimination. Complaints about a supervisor's 'rude' conduct, or other generalized complaints which do not alert the employer or person receiving the complaint 'that [the employee's] complaints were based on an allegation of discrimination,' are not protected activity." (footnotes omitted) (alteration in original)).

     However, Strothers alleges that she complained to many "authority figures" about the "daily harassment" by Koubek, and that she "sent a memo complaining of the incidents and

continued harassment."   Compl. ¶¶ 7, 20.   And she complained to Piringer of "a very uncomfortable and hostile environment."  Casual Friday Mem. 2.  The Fourth Circuit has found in cases of sexual harassment that complaining of "harassment" is sufficient to constitute protected activity.  *See Burgess v. Bowen*, 466 F. App'x 272, 282–83 (4th Cir. 2010); *Okoli v. City of Balt.*, 648 F.3d 216, 223–24 & nn.8–9 (4th Cir. 2011).  This is because "[c]ourts and employers generally understand 'harassment' to be a term of art."  *Okoli*, 648 F.3d at 224 n.9 (citing *Barbour v. Browner*, 181 F.3d 1342, 1355 (D.C. Cir. 1999)).  I can see no logical reason why that conclusion should not extend to harassment based on race rather than sex, nor am I aware of any case in which the Fourth Circuit has so limited its holding in *Okoli*.  Accordingly, though Strothers perhaps could have been clearer about the specifics of her complaints, I find that, as alleged in the Complaint, she was sufficiently clear to have engaged in protected activity and therefore she has stated a claim for retaliation.  Accordingly, the motion to dismiss must be denied with respect to retaliation.

   *3.  State Tort Claims*

   The City correctly notes that a liberal reading of Strothers's complaint suggests that she may have intended to state a claim for slander, Def.'s Mem. 16, and seeks dismissal of that claim on sovereign immunity grounds.[5]

   "[D]eeply ingrained in Maryland law is the doctrine of sovereign immunity."  *Nam v. Montgomery Cnty.*, 732 A.2d 356, 362 (Md. Ct. Spec. App. 1999).  Under the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5-301 *et seq.*, "'a plaintiff may not sue a local government directly . . . but must sue, instead, the employee.'"  *Edwards v.*

---

[5] To the extent that the City reads the Complaint as including a wrongful termination claim, that claim appears to be a claim of discriminatory discharge under Title VII, and so I will not discuss it separately here.

*Mayor and City Council of Balt.*, 933 A.2d 495, 458–59 (Md. Ct. Spec. App. 2007) (quoting *Williams v. Montgomery Cnty.*, 716 A.2d 1100 (Md. Ct. Spec. App. 1998), *aff'd*, 754 A.2d 379 (Md. 2000) (ellipsis in original)).  Thus the City is correct that Strothers cannot bring her tort claims against it, and  any state-law claims must be dismissed, although that dismissal will be without prejudice to seeking to bring those claims against a proper defendant.

Although it is far from clear that Strothers has complied with the procedural requirements of the LGTCA or that a slander claim against Koubek would be timely, *see* Cts. & Jud. Proc. § 5-105 ("An action for assault, libel, or slander shall be filed within one year from the date it accrues."), I need not address those issues here.

### C.  Conversion to Summary Judgment

The City has captioned its motion as one to dismiss, or in the alternative, for summary judgment.  However, whether to convert a motion to dismiss to one for summary judgment under Rule 12(d) is a matter within my sole discretion, and I find conversion to be inappropriate in a case such as this, where an unrepresented plaintiff has stated a valid claim and has not yet had the opportunity to explore the merits of her claim in discovery.  Accordingly, I will not do so.

**IV.     CONCLUSION**

Accordingly, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as a motion to dismiss, will be DENIED with respect to Plaintiff's claims for retaliation, GRANTED without prejudice with respect to any state-law tort claims, and otherwise GRANTED.  Finally, because the case will proceed as to Plaintiff's retaliation claim, I will appoint *pro bono* counsel to represent her going forward and schedule a scheduling and case management telephone conference once counsel has been appointed.

A separate order shall issue.

Dated: <u>July 27, 2015</u>                                      <u>        /S/            </u>
                                                                                           Paul W. Grimm
                                                                                           United States District Judge
dsy